### In the matter of MARGARET ELIZA WALDRON.

*Where a habeas corpus is directed to a private person to bring up an infant, the court are bound, ex debito justitiæ, to set the infant free from improper restraint; but whether they shall direct it to be delivered over to any particular person, rests in their discretion under the circumstances of the case; and that, although the person making the application be the father of the infant.*

*Where an infant was in the custody of its grandfather, and it appeared that it would be more for the benefit of the infant to remain with its grandfather, than to be put under the care of the father, and no improper restraint was shown, the court refused to direct the infant to be delivered to the father.*

A *HABEAS CORPUS* was issued in this case, in *May* term last, to *Andrew M'Gowan,* to bring up the body of *Margaret Eliza Waldron,* an infant, alleged to be detained in his custody. It appeared, from the affidavits which were read to the court, that *John P. Waldron* had married the daughter of *Andrew M'Gowan,* and that, having become embarrassed and insolvent, *M'Gowan,* in *February,* 1813, took his daughter to his house, without her or her husband's consent, as was alleged on the part of *Waldron,* but positively denied by the affidavits on the opposite side. Mrs. *Waldron* lived with her father until her death; and, during her residence with her father, *Margaret Eliza Waldron* was born, who has always been supported by her grandfather. *Waldron* used to visit his wife shortly after her removal to her father's, but had discontinued his visits for a long time previous to her death, and had not visited his child, being deterred, as he alleged, but which was denied by the other side, by the unkind and repulsive treatment which he met

with from *M'Gowan* and his family. *M'Gowan* is a man in very affluent circumstances, and abundantly able to educate and maintain his granddaughter; and, it appeared, that *Waldron* was insolvent, and unable to pay certain trifling debts which he had contracted, although it was alleged that his mother, with whom he lived, was competent and willing to support him and his daughter. It appeared, also, that the infant's mother was the only daughter of *M'Gowan*, and the infant the only remaining grandchild in the family, and would, most probably, receive the greater part of the property of her grandparents, on their death.

*Van Wyck*, in behalf of the father, moved to have the infant discharged from the custody of his grandfather, and delivered to his father. In support of the motion, he cited *The King* v. *Delaval*, (1 *Wm. Bl. Rep.* 412.,) and *The King* v. *De Manneville*, (5 *East's Rep.* 220.)

*T. A. Emmet* and *Smith*, contra, contended, that this was not the proper writ for the father in this case; that the writ of *habeas corpus* was for the benefit of a prisoner unlawfully detained in custody, and granted on his application. The writ is solely for the benefit of the person wrongfully deprived of his liberty, and for the purpose of obtaining his liberty; third persons never apply for it, except in the case where the party is so confined that he cannot himself make the application. Here there is no pretence that the child is forcibly detained, or in any degree deprived of its liberty; on the contrary, it is under the care of its grandparents, in whose house it was born, and who have taken the whole charge of its nurture and education.

The only case in which this writ has been abused, or wrongfully applied to a case where the party was not under restraint, is that of *The King* v. *Johnson;*[*] and that case was, afterwards, overruled as not law.[†] All that the court is bound to do, is to see that the party is not wrongfully imprisoned, or detained against his will. If he is so, they will set him at liberty; and, if of sufficient age, leave him to go where he pleases. This writ is not to be made the engine of parental authority. Where a child was 13 years old, he was allowed to express his wish, and the court of K. B., in the exercise of its discretion, refused to order

[*] 1 *Str.* 579.
[†] 2 *Str.* 982. *King* v. *Smith.*

him to be delivered over to his father. Where the child is of such tender years that it cannot form a proper judgment, this court will exercise its judgment for the benefit of the infant, and do what, in its conscience, it thinks most for the interest of the child. It is in the sound discretion of the court to alter the custody of the infant, or not. The interest and welfare of the child are alone to be viewed on this writ. The rights of parental authority, or claims of guardianship, are to be tried in a different way.*

*Bac. Abr. Hab. Corp. (B. 13.)

The *Court* said they would take time to advise until the next term, and remand the child, in the meantime, to the custody of the grandfather, with the view that the matter might be amicably adjusted, so as to render any interposition of the court unnecessary; and they strongly recommended to the father to let his child continue with its grandparents.

*Cur. ad. vult.*

No compromise, or agreement, having taken place between the parties claiming the custody of the child,

THOMPSON, Ch. J., now delivered the opinion of the court. Upon the return to the *habeas corpus*, which has been allowed in this case, the question presented to the court is, whether they are bound to deliver over the child to her father. From the affidavits which have been laid before the court, little doubt can be entertained that it will be more for the benefit of the child to remain with her grandparents than to be put under the care and custody of her father; and if this court has any discretion in such case, it will, no doubt, be discreetly exercised, by permitting the child to remain where she is.

The general principle applicable to cases of this kind, is laid down by Lord *Mansfield*, in *Rex* v. *Delaval and others*, (3 *Bur.* 1436.,) that in cases of writs of *habeas corpus*, directed to private persons to *bring up infants*, the court is bound, *ex debito justitiæ*, to set the infant *free from an improper restraint*. But they are not bound to deliver the infant over to any particular person. This must be left to their discretion according to the circumstances that shall appear before them. In the present case the child cannot be considered under any improper restraint;

she was born at the house of her grandparents, and has always lived with, and been brought up by, them. There is nothing appearing, in any manner, to show that she is kept there against her will and consent. The case of the *Commonwealth* v. *Addicks and wife*, (5 *Binney's Rep.* 520.,) is very much in point, and a strong corroboration of the principle, that it is a matter resting in the sound discretion of the court, and not matter of right which the father can claim at the hands of the court. It is to the benefit and welfare of the infant to which the attention of the court ought principally to be directed; and this can be much better guarded and protected by the court of chancery, under its peculiar jurisdiction, than by this court, upon *habeas corpus.* (10 *Ves.* jun. 59.)

We think, therefore, that it will be a due exercise of the discretion with which the law has invested us, to deny the present application; leaving the father to pursue his remedy, if any he has, in the court of chancery, where questions of this kind more properly belong; there being no actual improper restraint of the infant. We think proper, however, to suggest, that the father ought, on all suitable occasions, to be permitted to see the child, taking it for granted that he will not attempt to take her away from the care and custody of her grandparents, except by the aid of some judicial proceeding.

ALBANY,<br>August, 1816.<br><br>MATTER OF<br>WALDRON.

Motion denied.