## DARNALL *v.* MULLIKIN and Another.

In this case husband and wife had been divorced, and the care and custody of their infant child had been awarded to the wife. Afterwards, the wife having married, and she and her second husband being about to remove from the State taking the child with them, the

husband petitioned the Court to award the guardianship and care of
the child to him; but it appeared in evidence that the parties were
equally able and willing to provide for the infant's nurture and edu-
cation, and equally qualified in respect of morals. *Held*, that such
cases are very much in the discretion of the inferior courts, and that
where that discretion does not appear to have been abused, the Su-
preme Court will not interfere with their judgments.

Nov. Term,.
1856.
—————
DARNALL
v.
MULLIKIN.

APPEAL from the *Hendricks* Circuit Court.

STUART, J.—The case is called by counsel a petition
to modify a decree.

*Friday,*
*November 28,*

It seems that in 1844 the defendant, *Amelia A. Mulli-
kin,*then the wife of *Darnall,* applied for a divorce,
which was granted. The care and custody of their
infant son, *James A. Darnall,* was confided to the mother
until the further order of Court.

This petition is by *William C. Darnall,* the father of
the infant, to have the care and guardianship of the in-
fant awarded to him. It may, therefore, be regarded
rather as a petition for a further order of Court on the
subject, than as a petition to modify the decree.

After stating the divorce, the order of the Court as-
signing the child, then eighteen months old, to the
custody of the mother, and that the infant had ever
since resided with her, the petition states that in 1846,
two years after the divorce, *Amelia* intermarried with
the defendant, *Mullikin;* that he, *Darnall,* is desirous
of giving his son, *James A.,* a liberal education; that
he has both the inclination and ability so to do; that if
his son remains with his mother and step-father he
must grow up in ignorance; that the step-father is un-
educated, and, encumbered as he is with the support of
his own children, he has neither the inclination nor
ability to educate the step-son; that he is informed and
believes that *Mullikin* and wife are about moving to
*Iowa,* taking *James A.* with them. Wherefore he prays
an order enjoining them from removing the child be-
yond the jurisdiction, and that the guardianship of the
infant be granted to the petitioner. The petition is
verified by the affidavit of *Darnall.*

*Mullikin* and wife answer, denying the allegations in the petition as to the greater inclination or ability of *Darnall* to educate the infant; denying that his education had been neglected as charged; and charging that the petitioner was in 1844, and ever since has been, insolvent and wholly unable to afford the education proposed in the petition. They further allege that their care, &c., in providing for and schooling the infant, was of the value of 200 dollars a year, making to them a cost of 2,000 dollars,—no part of which the father had either contributed or tendered.

His reply, in the absence of a demurrer, is, perhaps, sufficient to put the defendants to the proof of whatever affirmative matter, pertinent to the issue, their answer contained. Trial by the Court, finding for the defendant, and judgment. *Darnall's* motion for a new trial was overruled, the evidence made part of . the record, and the cause appealed to this Court.

Questions of this character are very much in the discretion of the Court below. At the time of the divorce in 1844, the infant was but little better than a year old. It was every way fitting that the mother should have the custody and nurture of the infant. But that trust she held only until the further order of the Court. The infant as a ward of the Court, might be removed from the custody of the mother to that of the father, or *vice versa*, as the social position, moral worth, and pecuniary ability of the parties might seem to indicate. The best interest of the ward is the first care. So far as his interests can be promoted with a due regard to the rights and feelings of both parents, it should be done. But if it were shown that both parents were improper persons to discharge the duties of such a trust,— as if both were grossly immoral,—it is presumed the Court might remove the infant from the custody of the parents altogether. 10 Ves. 59.—In the matter of *Waldron*, 13 Johns. 418.

It may be premised that there is no evidence in the record going to show the insolvency of the petitioner.

It is shown that the petitioner lived with his mother and sister in the town of *Danville, Indiana;* that he was engaged in selling goods in partnership with one *Depew,* and that he was doing a thriving business; that his mother and sister keep house for him; that he is a man of unexceptionable morals, every way competent to take care of, support, and educate his son; that his home, thus composed of the petitioner, mother, and sister, would be a proper and desirable place for the infant, then eleven or twelve years old, to reside.

Nov. Term,
1856.

DARNALL
v.
MULLIKIN.

It further appeared for the petitioner that *Mullikin* had frequently, within a few weeks, said that he intended to go to *Iowa* on a visit with his family, and if he liked the country he would remove there.

On the part of *Mullikin* and wife it was proved that their morals and standing were good; that the infant had been well treated by them; that he had been educated as well as boys of his age usually are; that his step-father was able to maintain and educate him; that his support and education were worth 80 dollars a year; that his moral training had been good; and that he. preferred to live with his mother, giving as a reason that he was not acquainted with his father, &c. This was all the evidence.

It otherwise appears that there were three children as the issue of the marriage with *Mullikin.*

The whole case is singularly vague as to the actual pecuniary condition of both parties. It does not appear whether they were worth 10 dollars or 10,000 dollars. The record is so barren on that point that no definite conclusion as to the pecuniary responsibility of either party can be deduced. It must suffice to conclude with the vague presumption that they were both able to provide for the nurture and education of the infant.

In cases like this where the claims of both parents on the score of morals, pecuniary responsibility, &c., are so nearly equal, other considerations must be called in to settle the preponderance,—keeping in view that while the morals and education of the infant are the

primary objects to be attained, the wishes and affections of the respective parents are not to be lightly overlooked.

But this was a matter for the consideration of the Court below. It does not appear that the discretion has been abused; and only in that event would this Court interfere.

*Per Curiam.*—The judgment is affirmed with costs.

*H. C. Newcomb* and *J. S. Harvey*, for the appellant.

*C. C. Nave*, for the appellees.