Ashburn, J.
It is claimed the errors assigned on the-record do not raise the question on the demurrer.
The manner in which errors are assigned should not induce a court of review to overlook questions of real merit, in -a case. Reviewing courts are not required to embark on a voyage to discover errors not specifically assigned. Where, however, the real question in a case is manifest, as in this case, the question will not be overlooked.
The demurrer is special and general. Three grounds of demurrer are alleged.
I. Plaintiff has not legal capacity to sue.
*305 II. Misjoinder of parties defendant.
III. The petition does not state facts sufficient to constitute a cause of action.
In discussing the first question on the demurrer, the third cause will be considered to a considerable extent.
I. Plaintiffs legal capacity to maintain this action.”
If plaintiff had the lawful right to and actual custody of the infants at the time of the alleged wrongful act of defendants, he has legal capacity to sue. As we understand the argument of counsel for defendants, they claim the father of these minor children, only, has a right of action.
In this country there is quite a uniformity in the decisions in relation to the rightful custody of infant children. The general spirit of modern adjudged cases on this subject, both in England and the States, does not essentially differ. As a general rule, the father is considered as being entitled to the custody of his minor children, and in case of his death or incapacity, the mother. In cases of controverted custody, the present and future interests of the minor controls the judgment and directs the discretion of courts. While the legal rights of parents are to be respected, the -welfare of the minor is of paramount consideration. If necessary to attain that end, the custody of minor children will be taken from their parents, or refused to them. Hurd on Habeas Corpus, 528 ; Tyler on Infancy, etc., 283.
When the question of custody arises between the father and mother, or between either of them and another, as to rightful custody, and the minor is of an age to make an intelligent and discreet choice, courts will respect the minor’s election. When the child is too young to exercise judgment in making a choice, courts are never restrained by any supposed absolute right of custody in either parent, but will direct the custody where the best and highest interests of the infant will be subserved.
It sometimes happens that parents have abandoned their *306 minor children, or by act and word transferred their custody to another. In such cases, where the custodian is, in every way, a proper person to have the cafe, training, and •education of the infant, and the court is satisfied its social, moral, and educational interests will be best promoted by remaining in the. custody of the person to whom it was transferred, or received, when abandoned, the new custody ■will be treated as lawful and exclusive.
After the affections of both child and adopted parent become engaged, and a state of things has arisen which can not be altered without 'risking the happiness of the child, and the father wants to reclaim it, the better opinion is that he is not in a position to have the inferierance of a court in his favor. His parental rights must yield to the feelings, interests, and lights of other parties acquired with his consent.
In this case, for the purposes of the demurrer, it is admitted the father and mother were not in a condition to take care of their infant children, and for that reason transferred the care and possession of both minors to plaintiff, and wholly renounced and abandoned all right, as parents, to the custody of the infants to the plaintiff; that plaintiff .accepted and took upon himself their care and custody; that defendant knowing these facts, and intending to deprive plaintiff of the custody, possession, and services of the minors, and to injure him, wrongfully, without consent or authority, forcibly took possession of the minor children, and carried them out of Pickaway county into other counties 'in the state, and there concealed them, etc.
Upon this state of fact, plaintiff, who is the grandfather •of the minors, stood to them, in loco parentis, with title to their custody, which no-one could forcibly question with impunity. If these children had been but domestic animals, plaintiff had a lien upon them, which the owner would have been bound to discharge before he could assert a right to their custody. As against a wrong-doer, plaintiff had lawful ■right, if forcibly taken from his possession, to recover them .at the costs of the tort-feasor.
*307 Questions, as to the rightful custody of minor children, Nave generally, in this country, been made in proceedings in habeas corpus, where alleged illegal restraint was the chief question for consideration. As however, the decisions, in such cases, and the clear expressions of judges, have a direct bearing upon the rights of parents and others to the rightful custody of minors, a brief allusion to a few of them will tend to show the spirit of the law and blaze the way to a correct conclusion.
The State ex. re. Lynch v. Bratton, decided by the Supreme Court of Delaware, reported in American Law Reg. (N. S.), vol. 15, 859, is a case in which there was a contest for the custody of infant children between their father and grandmother. Relator intermarried with Emma Bratton, daughter of respondent, and to them three children were born. The father and mother were divorced, and the custody of the •children awarded to the mother. In 1870 ,the mother and children went to live with respondent, and resided with her until 1873, when the mother of the infants died, committing the care and custody of her children to respondent, who accepted the charge. In 1876, relator commenced proceedings to recover possession of his minor children.
After a full and careful review of the authorities, the court held that while the father has prima facie right to the custody of his minor children, his right is not an absolute and unqualified right. “He may relinquish or forfeit it by contract, by his bad conduct, or by his misfortune in being unable to grant proper care and support.”
Where the father asserts his legal right, and the welfare of his minor child is involved, courts are not embarrassed in asserting their power, in a discreet judgment, as to its proper, and for the time being, lawful custody. In the case of the State v. Smith, 6 Greenlief, 462, the relator was the father, and the respondent the grandfather of the minor, Parris, J., said: “From an examination of the authorities, I consider the law as well settled that it is in the sound •discretion of the court to alter the custody of these minor *308 children or not, and that the father can not claim them as matter of right.”
To the same effect is Dumain and wife v. Guynne, 10 Allen, 272. Chapman, J., said: “ But there are cases where the policy of the law is best promoted by the separation of children from one or both of their parents.”
In Cone v. Dougherty, 1 (Pa.) Leg. Gaz. 63, cited in note to Hurd on Habeas Corpus, 550, in Pennsylvania, it was held, “ that a parent might relinquish the right of custody of his child by parol. Where a father gave the-care of his infant daughter to a sister of its deceased mother, and afterward only visited it about once a year, and never contributed to its support, and after a lapse of eight years, claimed custody of the child, such facts were held to establish the abandonment of the father’s right.” See also Waldren, 13 Johns. 418. See U. S. v. Green, 13 Mason, 482; Mercier v. The People, 25 Wend. 101; Gusweiler v. Dodez, 4 Ohio St. 615; Ex parte Peter M. Shumput, 6 Rich. 344.
An English case (Lyons v. Blenkin, Jacobs, 245) is in harmony with the American decisions. Lyons, first by habeas corpus, and finally by petition in chancery, sought to recover the custody of his three minor children from defendant, who was the husband of their aunt. The father, verbally and by act, had transferred his three minor children to the custody and care of their maternal grandmother, who accepted the custody and charge. By her will she provided an estate for them and her own daughter, Mrs. Blenkin, and appointed by her will her daughter as. guardian of the minor grandchildren, and custodian of their persons and the estate devised to them by the testatrix. The aunt took charge of the minors, cared for, and educated them for several years, when, on account of differences between the father and aunt, he commenced proceedings to recover the custody of his children and their fortunes.
After a patient and full investigation, the lord chancellor says (p. 262): “It is always a delicate thing .for a court to *309 interfere against parental authority, yet we know that the ■courts do it in cases where the parent is capriciously interfering in what is clearly for their benefit.” After remarking upon the fact that the father had voluntarily placed his children in the custody of their grandmother, and acquiesced in the possession of the aunt after it was transferred to her by the will of the grandmother; that they had formed habits, associations, and attachments under her roof and supervision, he further says (on p. 264): “ I have not, in my judgment, a ease before me that can justify me in removing these children from the custody in which they .are, or from the course of education in which they have been placed and have hitherto gone on.” The custody of the aunt thus acquired was held to be superior to the right of the father.
After a thorough review of this question, Mr. Hurd, in his valuable work on Habeas Corpus, says (p. 537): “Why then may he (the father) not transfer to auother person the right of custody, where he may thus abandon or forfeit, especially where the interests.of the child are not prejudiced by the arrangement ? And how can the court pronounce that- custody which is held under a fair agreement with the parent, and not injurious to the welfare of the child, to be an illegal restraint?” It is lawful custody until set aside by superior recognized legal right. See also Tyler on Infancy, etc., 284.
The statute defining and punishing child stealing (S. &C. 457) provides : “ That every person who shall maliciously, or forcibly, or fraudulently, lead, take, or carry away, or ■decoy, or entice away any child under the age of ten years, with intent unlawfully to detain or conceal such child from its parent or parents, or guardian, or other person having the lawful charge of such child, shall, upon conviction thereof, be imprisoned in the penitentiary, and kept at hard labor, not more than seven years and not less than one year.”
The legal effect of the facts alleged in the petition, and admitted to be true for the purposes of the demurrer, brings plaintiff’s possession of the minor children named *310 in the petition within the scope and meaning of the statute-making child stealing a felony. Plaintiff had the lawful charge of the children, and the spirit of this statute would rather aid than disturb the common-law right of action for damages for their wrongful abduction. Plaintiff, occupying, by contract founded upon sufficient consideration, the-protecting relation of the parents toward the minors, was vested with legal capacity to institute and maintain, in his own name, an action for damages against oue who wrongfully and forcibly takes them from his care.
From authority and reason, the following propositions may be stated generally:
1. As a general rule the parents are entitled to the custody of their minor children. When the parents are living-apart, the father is, prima facie, entitled to that custody, and where he is a suitable person, able and willing to support and care for them, his right is paramount to that of all other persons, except that of the mother in cases where the infant child is of such tender years as to require her present care; but in all cases of controverted right to custody, the welfare of the minor is first to be considered.
2. The father’s right is not, however, absolute under all circumstances. He may relinquish it by contract; forfeit it by abandonment; lose it by being in a condition of total inability to afford his minor children necessary care and support.
3. Where a father and mother, living apart, by agreement transfer the care and custody of their infant children to the grandfather of the children, in consideration that he will receive, care, and provide for them, and in pursuance of such agreement does take them in charge, the custody of the grandfather is lawful, and he has legal capacity to maiutain an action for damages against one who wrongfully takes, or causes them to be taken, from his custody.
II. It is urged, under the second branch of the special demurrer, that if the taking of the infants should be unlawful, the tort is alleged to have been committed jointly, by- husband and wife, and in such case coercion of the hus *311 band will be presumed. For this reason it is claimed the demurrer should have been sustained as to the wife.
It would, perhaps, be sufficient on this branch of the demurrer, to say that the code does_ not recognize the misjoinder of parties defendant as cause for demurrer. It is only where there is a defect of parties plaintiff or defendant that a demurrer may be interposed. Code, § 87.
The doctrine of the law, however, is adverse to the claim made by counsel in argument, as we think will clearly appear from an examination of the following authorities. Wright v. Leonard, 11 C. B. (N. S.), 258, 266; Keyworth v. Hill and wife, 3 B. & A. 685; Barns v. Harris et al., Busbee, 15; Bishop on Laws of Married Women, vol. 1, §§ 42, 43; vol. 2, §§ 255, 256.
The general rule may be stated thus, in actions for damages, arising from the wrongful act of a married woman, husband and wife must be joined as defendants. If, in the commission of the tort, she acted under marital coercion, and such fact does not appear on the face of the petition, her defense must be made by answer.
III. At common law, a parent has an action for the seduction of his child, to whose services he is entitled. Analagous to the injury occasioned by seduction, is that of the abduction of a minor child from its father, or one having it in lawful char-ge. To l-ecognize the doctrine that one standing in loco parentis, clothed with the lawful custody of an infant under five years old, has no legal capacity to sue or maintain an action for damages, either general or special, against the child thief, would be an unwarranted restriction upon the common-law rights of the citizen. It would be no less restrictive, to hold that no action can be maintained for such course, by reason of the fact that the infant, because of its tender years, is unable to render any valuable services. The action rests upon the right to service, and not upon actual services.
Plaintiff, in substance, charges that these minor children were wrongfully taken from his possession, by defendants, to deprive him of tlieir “possession and services.” He *312 avers he was at a large expenditure of time and money in recovering possession of them; that the infants, while in the custody of defendants, were “ neglected, abused, and ill-treated, so that they became feeble and sick,” requiring great care, extra nursing, etc., to restore them to their customary health, and that this extra burden was occasioned to him by the wrongful acts of the defendants.
We are not at liberty, in view of the admitted facts, to presume, as suggested by counsel for defendants, that defendants acted at the instance of the father of the infants. If he was consenting to the stealing of them, as now advised, the court, looking to the interests of the minors, and the legal rights of plaintiff, would assert its power to protect the grandfather against the tortious acts of the father as well as those off strangers. The custody of the grandfather was legal, and one who would interrupt that relation should do so through the courts. If the father, he should have entered through the straight gate of the law to obtain possession of his children, and not have attempted to climb over it in some other and wrongful way. Jones v. Cleghorn, 54 Ga. 15.
On demurrer, an averment that the wrongful act complained of was done to. deprive plaintiff of the services of the minors, without averring their ability to serve him, or the nature of the services of which he was deprived, is sufficient on the question of per quod servitium amisit.
Plaintiff, in loco parentis, in asserting his lawful custody to the infants, against one who has unlawfully taken them from his possession, can recover, as compensatory damages, the expenses necessarily incurred by him in reclaiming,' and in nursing them through any sickness occasioned by the wrongful act of defendants, or that was occasioned through their agency. Dennis v. Clark, 2 Cush. 347; Moritz v. Garnheart, 7 Watts, 302; Kirkpatrick v. Lockhart, 2 Brev. 276; Martin v. Payne, 9 Johns. 387; Hewett v. Prine, 21 Wend. 78; 2 Addison on Torts, 1094.
The right to the custody of the infants, and their services as an incident thereto, is the gravamen of the action. *313 Actual loss of services is not an essential allegation to ■enable plaintiff to maintain his action.
But whether damages, other than compensatory, may be recovered, we do not' say, for the reason that such question is not necessarily before us now for determination^

Judgment reversed and cause remanded.