Bryan v. Lyon et al.

Filed Dec. 11, 1885.

---

No. 12,352.

BRYAN v. LYON ET AL.

HABEAS CORPUS.—*Petition by Father for Custody of Children.*— *Welfare of Children Governing Consideration.*—Under section 2518, R. S. 1881, in a *habeas corpus* proceeding by a father for the custody of minor children, the custody should, all else being equal, be awarded to the father; but such section does not overthrow the general rule that, even as between the father and others, the welfare of the children is the governing consideration.

SAME.—*Rights of Guardian.*—The fact that one has been appointed guar-

dian of minor children, but without the knowledge or consent of their father, is not conclusive against the latter's right to their custody, if he is a suitable person.

SAME.—*Divorce.*—*Decree Awarding Custody of Children to Mother is not Perpetual Bar to Father's Rights.*—Upon the death of a mother to whom, in a proceeding for divorce, the custody of the children was awarded, on the ground that the father was not a suitable person to have their care, the latter may, on a satisfactory showing of fitness, secure their custody, as the judgment is not a perpetual bar to such right.

SAME.—*Sufficiency of Return and Evidence.*—For a return to the writ of *habeas corpus* held sufficient on exceptions, and for evidence considered and held sufficient to justify the trial court in not awarding the custody of children to their father, see opinion.

From the Vanderburgh Superior Court.

*S. B. Vance*, for appellant.

*J. M. Shackelford* and *A. L. Doss*, for appellees.

ZOLLARS, J.—By a proceeding of *habeas corpus*, appellant seeks to recover the custody of his two children; one of whom, a little boy ten years old, is in the custody of appellee Lyon, and the other, a little girl eight years old, is in the custody of appellee Ferguson. He filed a separate complaint against each of the appellees. The cases were put at issue, and, by the agreement of the parties, tried together and come here, practically, as one case. He alleged in his complaint, that on the 2d day of April, 1874, he and Sallie R. Lyon, who is now dead, were married; that the two children were born of that marriage, and that appellees wrongfully have and retain them in their custody.

A writ was awarded, and appellees jointly and separately made returns thereto. For the purposes of this decision we need only set out the separate return by Lyon. It is as follows:

" The defendant John C. Lyon amends his return to the writ herein, and for amendment says that he has the child George V. Bryan, mentioned in said writ, present in the court room; that it is as the statutory guardian, and also as the uncle of said child, George V. Bryan, this respondent has the lawful and rightful custody of said child.

" He says that said John Bryan, because of the facts here-
inafter set forth, is not entitled to, nor ought he to have the
custody of said child; that from the time of the birth of
said child, the said John Bryan virtually abandoned the
child and its mother.    The facts are these:    That on
the 3d day of April, 1874, said John Bryan married Sarah
Lyon, who was the sister of this respondent; that there were
two children born to the marriage, namely, the said George
V. Bryan, who is now about ten years of age, and Sarah
Ella Bryan, aged about eight years; that thereafter, to wit,
on the 14th day of January, 1878, said Sarah Bryan, who
had been a good, true and faithful wife, was compelled to and
did, for the reasons set forth in her petition, bring a suit
against said John Bryan in the superior court of Vander-
burgh county, Indiana, for a divorce from the said John
Bryan; that, among other things she alleged as the grounds
for a divorce, were the following:    That said John Bryan
had, during the three years and a half past, wholly failed, re-
fused and neglected to furnish or provide the necessaries of
life for herself and children; that said John Bryan was
wholly unfit and unsuitable to be entrusted with the care and
custody of said children, owing to his utter worthlessness and
failure to provide for his said family; that she had, since the
birth of her children, herself provided for them and fur-
nished both her children and herself with the necessaries of
life.

" To that petition the said John Bryan, though duly and
legally summoned by the sheriff of the county, the summons
being served upon him personally for more than ten days be-
fore the first day of the term at which said cause was set
down for trial, made default, and thereby admitted the truth
of all the allegations in said petition contained; that on the
5th day of February, 1878, the said cause came on for trial,
and said Sarah Bryan made proof of the truth of all the al-
legations in her said petition to the satisfaction of the court,
and thereupon the court rendered its decree, granting to said

Sarah Bryan a divorce from the said John Bryan, and also made an unconditional and absolute decree of the care, custody, education and guardianship of said two children, George V. Bryan and Sarah Ella Bryan, to the mother, Sarah Bryan, and giving judgment against said John Bryan for the costs therein, which amounted to seven dollars, and which, at the time of his obtaining the writ herein, remained wholly unpaid. That his sister, Sarah Bryan, after obtaining said divorce and the custody of her two children, continued by her efforts, she being a teacher in the public schools, to support and maintain herself and her two children until the 29th day of August, 1884, when she lost her life in the steamboat disaster on the Ohio river, between Evansville, Indiana, and Henderson, Kentucky; that it was her often expressed wish that in case of her death the said John Bryan should not have the custody of her two children, nor either of them, but she wished them to remain in the custody of her own relations.

"Your respondent further shows, that at the time said Sarah Bryan lost her life, the said John Bryan was, and had been for several years previous, and he is now a non-resident of the State of Indiana; that he had abandoned said children; that he had married another woman, by whom he had one child, now living with its mother's relatives, the mother being dead; that on the 3d day of October, 1884, this respondent was, by the circuit court of Vanderburgh county, Indiana, the same county in which said children lived and in which they owned some personal property, duly and legally appointed the guardian of the persons and property of both of said children. He files herewith, as part hereof, his letters of guardianship. He further says he has the child, George V. Bryan, living with him, at his residence, in the city of Evansville, Indiana, as a member of his own family; that the respondent and his wife are both attached to said child, and the child is also attached to them; that he and his wife are able and fitted to rear and educate said child, and

that they will do so, treating the child as they do their own children; that the child, Sarah Ella Bryan, is at the home of James R. Ferguson and his wife, Ella Ferguson, who was a sister of the deceased mother, and the aunt of the child; that Ferguson and his wife are competent, able and well fitted to have the custody of said child, Sarah Ella; that they have taken her as a member of their own family, and they will rear and educate her as one of their own children; that the child is greatly attached to them, and she is decidedly opposed to going into the custody of said John Bryan. He further says that said John Bryan is now a widower; that he has no home of his own; that he is a travelling salesman; that if he were given custody of said children he would take them out of the State of Indiana and place them at the house of his father, who is also a widower, with two sisters of the said Bryan, who are utter strangers to said children; that said John Bryan is comparatively a young man yet; that he has already been married twice, and there is a strong probability that he will marry another woman; that both of said children are now comfortably and happily situated; that they are both unwilling to go with said John Bryan, and leave behind them their mother's relations, who are now, and will continue to care for and educate them; that said John Bryan has no right in either law or morals to the custody of said children, or either of them."

Appellant excepted to each return, upon the ground that they and each of them are insufficient. His exceptions were overruled, and he excepted. That ruling is one of the grounds upon which he asks a reversal of the judgment.

His counsel rests his argument, in the main, upon section 2518, R. S. 1881: "Every guardian * * * shall have the custody and tuition of such minor, and the management of such minor's estate during minority, unless sooner removed or discharged from such trust: *Provided*, That the father of such minor (or if there be no father, the mother, if suitable per-

sons respectively) shall have the custody of the person and the control of the education of such minor."

The contention is that under this statute the father is entitled to the custody of his children, as against appellees, unless shown to be an unsuitable person; that the burden is upon them to show that fact, and that they have not shown it in the return made to the writ. Without deciding whether or not, in his petition or complaint, the father must allege that he is a suitable person to have the custody of his children, or whether or not those claiming the custody against him must allege and show that he is not a suitable person, we think that the return states such facts upon that subject as justified the court in refusing to strike down the return and in putting the parties to the proof. It is charged in the return that appellant ought not to have the custody of the children, because, from the time of their birth, he had virtually abandoned them and their mother; that she instituted a suit for divorce in 1878, when the younger child was very young, alleging in her complaint such abandonment and failure to provide the necessaries of life for her and the children, and that on account of his utter worthlessness, he was unfit to have the custody of the children. It is further alleged in the return, that after proper notice, appellant, by his default, allowed those charges to go as confessed, and allowed the custody to be awarded to the mother; that from that time, in February, 1878, until the mother's death, in August, 1884, she supported the children by teaching school, without any aid or care from appellant; that in the meantime he had married another woman, by whom he had one child, now living with its mother's relatives, she being dead; that he has no home of his own; that he is a travelling salesman; that if given the custody of the children he will take them out of the State, and place them with his two sisters, who are utter strangers to them and live with their father in Missouri, who is also a widower.

These several statements in the return, in connection with the other statements therein, that the children are now comfortably situated with their mother's relatives, and being well cared for and educated, are, as we have before stated, sufficient to justify the court in refusing to strike down the return, and in holding the case for a hearing. Under the above statute, all else being equal, the custody of minor children should be awarded to the father.

It was not the purpose of the statute, nor does it overthrow the general rule, well settled in this court and by the authorities elsewhere, that in a controversy for the custody of minor children, even as between the father and others, the future welfare and interests of the children will determine to whose care the custody should be committed. The right of the father or mother to the custody of the children will, in all cases, be fully considered, and be given due and full weight, but that naked right alone is secondary to the welfare of the child. *Jones* v. *Darnall*, 103 Ind. 569, and cases there cited; *Joab* v. *Sheets*, 99 Ind. 328; Church Habeas Corpus, section 442; Schouler Dom. Rel., section 248; Hurd Habeas Corpus, 461.

This rule is recognized by the above statute, which makes the right of the parent dependent upon the condition that the parent shall be a suitable person to have the custody, care and training of the child.

The cases cited by appellant, when properly considered, are not in conflict with the above cases and authorities.

In the case of *State, ex rel.,* v. *Banks*, 25 Ind. 495, there was a contest between the father and the grandfather of the child. The case was ruled upon the statement in the bill of exceptions that the father and grandfather were each proper persons to have the care, custody, and education of the child. It was held, therefore, that the custody of the child should be awarded to the father.

In the decision of the case, moreover, the court recognized the existence of the rule that the welfare and interests of

the child are the important things to be considered, and that its custody will not be awarded to the father unless he is a suitable person to have its care and training.

This will suffice upon this branch of the case until we come to consider the evidence.

The fact that Lyon was appointed guardian of the persons and property of the children, is not of itself conclusive against appellant's right to their custody, if he is a suitable person. In the appointment of the guardian, appellant was in no way a party, nor had he notice of the application for letters of guardianship, so far as shown by the returns to the writ.

It is argued by counsel for appellees, that the judgment of the court in the divorce case, awarding the custody of the children to the mother, was and is conclusive against any claim by appellant for such custody, notwithstanding the facts that the mother is dead, and that this controversy is between the father and other parties. We need not here intimate an opinion as to how much weight that argument might be entitled to were the mother alive, and this controversy were between her and appellant. However that might be, we are well satisfied that the judgment in the divorce case did not, and could not, forever cut off and bar appellant's right to the custody of his children. By reason of his neglect at the time, and prior to the divorce case, and, perhaps, for other reasons, he might have been an unsuitable person at that time to have the care and custody of the children; and especially might that have been so, as between him and the mother, the children being then quite young, and in need of a mother's care. It does not follow, however, that because he was at that time thus adjudged not entitled to the custody of the children, as against the claim of the mother, that adjudication shall be a perpetual adjudication of his unfitness, under all and changed circumstances, to have the custody of his children. The mother is dead. Her right to the custody of the children descended to no one. The status of the children, as fixed by the decree and judgment in the divorce

case, has been destroyed by the death of the mother and custodian.   Upon her death, no one had the right to the custody of the children, unless appellant, by reason of being their father and as such bound to maintain them, might claim that custody.   It might well be that his circumstances have materially changed since the judgment in the divorce case, and that he has changed with them.   From a negligent, neglectful, and unfeeling father, that he may then have been, it might well be that he has become in every way a fit and suitable person to have the custody, care, and training of his children.

If, indeed, such changes in him should be shown to have occurred, we know of no reason why he might not, as against all others, the mother being dead, assert and maintain his parental right to the custody of his children, notwithstanding that in a case between him and the mother of the children, she was adjudged to be the more suitable to have their custody and care.   It might well be that changed circumstances have made it eminently proper that he, of all others, is the proper person to have the training of his children.   Changed circumstances might well be such that it would be a wrong to the children to deprive them of the fostering care of him who, above all others, would love and cherish them.   Whether or not there have been such changes, it will be necessary for us to determine when we come to examine the evidence.   We are cited by appellee's counsel to the case of *Wilkinson* v. *Deming*, 80 Ill. 342.   In that case, it appears that in a divorce proceeding between a husband and wife, the wife was granted a divorce and awarded the custody of the child. After the death of the mother the father commenced a proceeding in *habeas corpus* against the testamentary guardian of the child to recover its custody.   In passing upon the relative rights of the parties upon appeal, the Supreme Court said that a decree of divorce being granted on the fault of the father, and giving the custody of the child absolutely to the mother, takes away, *ipso facto*, all control of the father over

the child; that it nullifies, or at least neutralizes, the rule of
the common law, and takes from the father all power there-
after over the infant until it shall be restored by the action
of a proper court; that by the decree the infant is no longer
the child of the divorced father, but is entirely under the con-
trol of the mother. This language must be limited to the
case before the court, and in doing that, it must be remem-
bered that the wife and mother, as she had a right to do under
a statute then in force in that State, had, by will, appointed
a guardian for the child, with the full right to its custody.
Under the decree in the divorce case, the mother had the ab-
solute custody of the child. Under the statute, she had the
right by will to transfer that custody to another. Thus the
right of custody continued with the mother while she lived,
and by her will passed at once, upon her death, to the person
named in her will. We have no such statute in this State,
and hence what was said in that case is not authority here.

Appellant filed what is denominated a reply to appellees'
returns to the writ.

Upon the issues made by the complaint, the returns to the
writ and the so-called reply, the case was tried. Appellant
read a number of depositions by persons in Louisville, where
he was engaged for some years, and in St. Louis, where he
now resides, all of which tend to show that he is a man of
good habits and good character, a competent business man,
more especially as a travelling salesman, and that he is now
engaged with his father and others in business in St. Louis.

By the cross-examinations of his witnesses, it is shown that
he lives with his father and two sisters in St. Louis; that he
makes business trips away, averaging about one per month,
and that he is absent on these trips usually three and four
days, and occasionally as long as thirty days. It is also shown
by the cross-examination, that after the divorce from the chil-
dren's mother, he married another woman, who is now dead,
and that the child born of this marriage is with its mother's
relatives.

To meet the case attempted to be made by appellant, appellees, in addition to what was developed by the cross-examination of his witnesses, read in evidence the petition in the divorce case already mentioned, the decree and judgment of the court in the divorce case, the letters of guardianship, and proved *aliunde*, that appellant did not support the children and their mother; that after the divorce he took no interest in the children, except that in 1881 he contributed about seventy-five dollars for their support; that with this exception the mother, by teaching school, supported the children until her death, in 1884; that after her death, on one occasion, appellee Lyon bought clothing for the little boy in the presence of appellant, who did not offer to pay for them; that the children are being well provided for, and are contented and happy in appellees' families, where they are being treated as members of the families; that they are very much attached to appellees and their wives, and object to going with appellant; that the attachment is mutual; that appellee Lyon is their uncle, and Mrs. Ferguson is their aunt on their mother's side. Appellant did not offer himself as a witness, nor did he testify in the case.

It is very plain from the whole case, that appellant's course towards the children has not been that of an affectionate and solicitous father. He alleged in his reply, that he had not contributed towards their support, except $75 in 1881, for the reason that he had been denied correspondence with them and the privilege of seeing them. He did not attempt to prove this by himself, nor by any other witness. So far as shown, he did not see them during the life of their mother, subsequent to the divorce, nor did he make any effort to see them. The only attention he has shown them, so far as shown by the record, was the contribution of the $75 and the institution of this proceeding for their custody. The natural impulse of all courts is to award the custody of children to the parents, because of the feeling that there they

will be sheltered by the tender love and protecting care which they will not be so likely to receive elsewhere. Appellant's course, however, has not been such as to convince any one that in his custody, and domiciled with strangers in fact, although related by blood, they would receive the love and care they are now receiving from their mother's relatives. Indeed, appellant did not inform the court, except by statements in his reply, of what he proposed to do with the children, should their custody be awarded to him. For aught that appears from the evidence, his intention may have been to domicile them with strangers in fact and strangers in blood. A parent's fitness to have the custody of his children does not depend so much upon his wealth (if, indeed, that should ever be considered, except in pinching and abject poverty) as upon the tender attachment and watchful guardianship that spring from the relation. It is possible that a parent might have every other qualification, and so lack in these as to unfit him to have the custody and training of his children. To the extent that a parent may lack in these, to that extent his fitness to have the care and training of his children will be diminished. We do not mean by what is here said, that appellant is devoid of that parental love that might induce him to give the children proper care. We do hold, however, that considering his past course towards the children, the fact that he did not take the witness stand and inform the court of his purposes and provisions for a home for them, if their custody should be awarded to him, and considering the fact that the children are pleasantly and advantageously situated, we can not overthrow the decision of the trial court which leaves them, for the present, where they are. The trial court had the parties, the witnesses and the children before it, and was charged with the exercise of a sound discretion. We are unable to say that that court erred in judgment or abused its discretion. *Dubois* v. *Johnson*, 96 Ind. 6; *Darnall* v. *Mullikin*, 8 Ind. 152.

The court below did not decide how long the children

shall remain in the custody of appellees, nor how long appellant shall·be deprived of their custody ; neither does this court in affirming the judgment of the court below.

The judgment is affirmed, at appellant's costs.

