42   607
6ap413
42   607
40ap168

IN THE MATTER OF THE GUARDIANSHIP OF ANNIE C. KING AND OTHERS.

*Proceedings for the removal of a guardian — may be commenced by a petition — the Supreme Court has power to remove a testamentary guardian.*

This proceeding was instituted by a petition presented by an executor of the will of E. R. B. King, deceased, to have the testamentary guardian of the infant children of the deceased removed, upon the ground that the guardian was not a competent and proper person to have the care and custody of the children.

*Held,* that an objection that the proceedings could not be lawfully commenced by petition, but that they should have been commenced by the service of a summons, was not maintainable.

That the further objection, that the Supreme Court had no authority to remove a testamentary guardian, was equally incapable of being maintained.

That as the court had the authority to deprive a parent himself of the custody of his children, where that was proven to be necessary for their benefit, it must certainly be equally authorized to remove a guardian who derives his or her authority wholly from the parent.

APPEAL by Phoebe F. Fullerton, testamentary guardian, from an order confirming the report of a referee and removing her from her guardianship of Annie C. King and others.

*Christopher Fine,* for the testamentary guardian, appellant.

*Joshua M. Van Cott,* for the petitioner, Donald Mackay, Executor of Elizabeth R. B. King.

DANIELS, J.:

The proceedings were instituted by a petition presented by Donald Mackay, an executor of the will of Elizabeth R. B. King, the mother of the infants, who by her will appointed Phoebe Fullerton, the appellant, for their testamentary guardian. The objec-

tion has been taken in the outset that the proceeding could not be lawfully commenced by petition, but that it should have been done by a summons, the process provided for commencing an action at law, or in equity. But the practice in this class of cases has been to proceed in a summary manner by petition, and it does not appear to have been intended to be dependent upon or restricted to the ordinary proceedings in an action. It has been urged that the case of *Livingston* (34 N. Y., 555), proceeded upon a principle adverse to this practice, but while the subject of the right to proceed by petition was there considered, it was not held or decided that this course of practice was improper. The general principle relating to it was on the other hand mentioned with approval, and that allows a petition to be presented in any matter " over which the court has jurisdiction by some act of the legislature or other special authority." (Id., 569.) And to the same effect is 2 Barb. Ch. [2d ed.] 579, note 2; and as the proceeding has been described in *Wilcox* v. *Wilcox* (4 Kernan, 575), a petition would be the proper mode for commencing it. The proceeding has been commenced by a petition under the latter branch of the rule just mentioned, as that has been provided for and sanctioned by the special authority of the court. It is not an action as that has been defined, for the reason that it is not necessarily brought to maintain or enforce a right of the petitioner, or to redress a wrong suffered by him, which are the objects of actions prosecuted in courts of justice. Strictly what an action may be now designated to be has not been defined in the present Code of Civil Procedure. What it contains on this subject is the statement made in subdivision 20 of section 3343, and that is, that the word action refers to a civil action, which is no more intelligible than many other portions of this code. The preceding Code by subdivision 2 of section 1 was more clear and explicit in its definition, and that defined an action to be a regular judicial proceeding in which a party prosecutes another for the enforcement or protection of a right or the redress or prevention of a wrong, and declared every other civil remedy to be a special proceeding. This definition was clear and apt and entirely consistent with the preceding as well as subsequent understanding of the distinction between an action and a special proceeding.

This proceeding has not been brought for the protection or enforcement of any right of the petitioner, or to redress any wrong sustained by him, but to inform the court of the existence of certain facts upon which the exercise of its paternal authority has been invoked in behalf of these infants. That authority is well established as a fundamental element of the law, and it requires the court, whenever a proper case may appear for that purpose, to interfere for the protection and welfare of infant children. It does not require, to be set in motion, that the party supplying the information shall disclose an injury to himself, or that any right he may be entitled to enjoy is in danger of being put in jeopardy. What he is required to do is to inform the court of such a state of facts as will render it evident that it should interpose for the protection of persons dependent upon it, as infants are, and when that information is supplied it is the court which acts and directs the proceedings found to be necessary to fully inform itself and indicate what action in the premises may appear to be proper. And this is one of the peculiar proceedings not originating in any legislative act, but prescribed and followed by the court as the best adapted to the necessities of such cases. The case is of such a description as ordinarily to require summary action, free from the intricacies and delays of an ordinary suit, and that it is the appropriate mode through which this action of the court is to be obtained is evident from this being the course of proceeding ordinarily taken for this purpose. The fact that actions are not resorted to for the purpose of inquiring into the conduct, competency or character of guardians is a strong argument against the correctness of the objection which has been urged upon this subject by the counsel for the appellant. Both principle and practice sanction this course of proceeding, and this objection must be still held, as it already has been, to be untenable.

The further objection that the court has no authority to remove a testamentary guardian is equally incapable of being maintained, for in the exercise of its authority it has often interposed to divest the parent himself of the custody of his child or children, where that may be proven to be necessary for their benefit. (*Matter of Watson*, 10 Abb. N. C., 215; *Matter of Waldron*, 13 Johns., 418; *People ex rel. Brush* v. *Brown*, 35 Hun, 324.)

**610** MATTER OF KING.

And as long as the court has the authority of depriving the natural guardians of the custody of their children, it certainly must be equally authorized to remove a guardian deriving his or her authority wholly from the parent. For it follows that the parent must be incapable of delegating any more complete or irrevocable authority than he or she can be held to possess. The rule upon this subject has been broadly stated in 2 Story's Equity Jurisprudence ([5th ed.], § 1339), to include all guardians, testamentary, as well as those otherwise appointed. And while the cases referred to, in support of the proposition, do not nominally include a testamentary guardian, the principle maintained by them is so broad as not to justify an exception to its operation in his or her favor. The object and purpose of the interference of the court is to secure the safety and promote the welfare of the children themselves, and wherever it becomes necessary for these objects to interpose, the custody and care of infants will, in all cases, be provided for as that can best be secured. For these purposes it has been rightly said " that the court interferes with the ordinary rights of parents as guardians by nature, or by nurture, in regard to the custody and care of their children. For though, in general, parents are intrusted with the custody of the persons and the education of their children; yet this is done upon the natural presumption that the children will be properly taken care of and will be brought up with due education in literature and morals and religion; and that they will be treated with kindness and affection. But wherever this presumption is removed : whenever, for example, it is found that a father (for example) is guilty of gross ill-treatment or cruelty towards his infant children, or that he is in constant habits of drunkenness and blasphemy, or low and gross debauchery, * * * . or that his domestic associations are such as tend to the corruption and contamination of his children, or that he otherwise acts in a manner injurious to their morals or interests; in every such case the Court of Chancery will interfere and deprive him of the custody of his children, and appoint a suitable person to act as guardian and take care of them and superintend their education." (2 Story's Eq. Jur. [5th ed.], § 1341.) And in its general bearing and extent the same principle is recognized and approved in *Matter of Welch* (74 N. Y.,

299); and it follows from this ample authority of the court to deprive the parent of the custody of his children, where that may be found to be necessary for their protection, education and maintenance, that it may also deprive a testamentary guardian of such custody.  *  *  *

[The judge then reviews at length the evidence and facts established thereby, and reaches the conclusion that the order of the court below, removing the guardian, should be affirmed.]  Rep.

Davis, P. J., and Brady, J., concurred.

Order affirmed, without costs.