Daniels, J.
The proceedings were instituted by a petition presented by Donald McKay, an executor of the will of Elizabeth R. B. King, the mother of the infants, who by her will appointed Phoebe Fullerton, the appellant, for their testamentary guardian. The objection has been taken in the outset that the proceedings could not be lawfully commenced by petition, but that it should have been done by a summons, the process .provided for commencing an action at law or in equity. But the practice in this class of cases has been to proceed in. a summary manner by petition, and it does not appear to have been intended to be dependent upon or restricted to the ordinary proceedings in an action. It has been urged that the case of Livingstone (34 N. Y., 555), proceeded upon a principle adverse to this practice, but while the subject of the right to proceed by petition was there considered, it was not held or decided that this course of practice was improper. The general principle relating to this subject was, on the other hand, mentioned with approval, and that allows a petition to be presented in any matter, “over which the court has jurisdiction by some act of the legislature, or other special authority. Id., 569. And to the •same effect is 2 Barb. Oh. (2d ed.), 579, note 2; and as the proceeding has been described in Wilcox v. Wilcox (4 Kernan, 575), a petition would be the proper mode for commencing it. The proceeding has been commenced by a petition under the latter branch of the rule, just mentioned,_ that it has been provided for and sactioned by the special authority of the court. It is not an action as that has been defined, for the reason that it is not necessarily brought to maintain or enforce a right of the petitioner, or to redress a wrong suffered by him, which are the objects of actions prosecuted in courts of justice. Strictly what an action may be now designated to be has not been defined in the present Code of Civil Procedure.
What it contains on this subject, is the statement made in subd. 20 of sec. 3343, and that is that the word action refers to a civil action, which is as intelligible as many *572 other portions of this code. The preceding Code by subd. 2 of sec. 1, was more clear and explicit in its definition, and that defined an action to be a regular judicial proceeding in which a party prosecutes another for the enforcement or protection of a right or the redress or prevention of a wrong, and declared every other civil remedy to be a special proceeding. This definition was clear and apt and entirely consistent with the preceding as well as subsequent understanding of the distinction between an action and a special proceeding.
This proceeding has not been brought for the protection or enforcement of any right of the petitioner, or to redress any wrong sustained by him, but to inform the court of the existence of certain facts upon which the exercise of its paternal authority has been invoked in behalf of these infants. That authority is well established as a fundamental element of the law, and it requires the court when-whenever a proper case may appear for that purpose, to interfere for the protection and welfare of infant children. It does not require to be set in motion, that the party supplying the information shall disclose .an injury to himself, or that any right he may be entitled to enjoy is in danger of being put in jeopardy. What he is required to do is to inform the court of such a state of facts as will render it evident that it should interpose for the protection of persons dependant upon it as infants are. And when that information is supplied it is the court which acts and directs the proceedings found to be necessary to fully inform itself and indicate what action in the premises may appear to be proper. And this is one of the peculiar proceedings not originating in any legislative act but prescribed and followed by the court as best adapted to the necessities of such cases.
The case is of such a description as ordinarily to require summary action free from the intricacies and delays of an ordinary suit. And that it is the appropriate mode through which this action of the court is to be obtained is evident from this being the course of proceeding ordinarily taken for this purpose. The fact that actions are not resorted to for the purpose of inquiring into the conduct, competency or character of guardians, is a strong argument against the correctness of the objection which has been urged upon this subject by the counsel for the appellant. Both principle and practice sanction this course of proceeding, and this objection must be still held, as it already has been, to be untenable.
The further objection that the court has no authority to remove a testamentary guardian is equally incapable of being maintained, for in the exercise of its authority it has *573 often interposed to divest the parent himself of the custody of his child or children where that may be proven to be necessary for their benefit. Matter of Watson, 10 Abb. N. C., 215; Matter of Waldron, 13 John., 418; People ex rel. Brush v. Brown, 35 Hun, 324.
And as long as the court has the authority of depriving the natural guardians of the custody of their children, it certainly must be equally authorized to remove a guardian deriving his or her authority wholly from the parent. For it follows that the parent must be incapable of delegating any more complete or irrevocable authority than he or she can be held to possess. The rule upon this subject has been broadly stated in 2 Story Eq. Jur. (5th ed.), § 1339, to include all guardians testamentary as well as those otherwise appointed. And while the cases referred to in support of the proposition do not nominally include a testamentary guardian, the principle maintained by them is so broad as not to justify an exception to its operation in his, or her, favor. The object and purpose of the interference of the court is to secure the safety and promote the welfare of the children themselves, and‘wherever it becomes necessary for these objects to interpose, the custody and care of infants will in all "cases be provided for as that can best be secured. For these purposes it has been rightly said: “that the court interfered with the ordinary rights of parents as guardians by nature, or by nurture, in regard to the custody and care of their children. For although in general parents are entrusted with the custody of the persons and the education of their children, yet this is done upon the natural presumption that the children will be properly taken care of and will be brought up with due education in literature and morals and religion, and that they will be treated with kindness and affection. But wherever this presumption is removed, whenever for example it is found that a father is guilty of gross ill-treatment, or cruelty, towards his infant children, or that he is in constant habits of drunkenness and blasphemy, or low and gross debauchery, * * * or that his domestic associations are such as tend to the corruption and contamination of bis children, or that he. otherwise acts in a manner injurious to the morals, or interests, of his children; in every such case the court of chancery will interfere and deprive him of the custody of his ■ children and appoint a suitable person to act as guardian and to take care of them and to superintend their education.” 2.Story Eq. Jur. (5th ed.), § 1341. . .
. . And in the general bearing and extent the same principle is recognized and approved in Matter of Welch, 74 N. Y., 299, and it follows from this ample authority of the court to deprive the. parent of the. custody of his children where *574 that may be found to be necessary for their protection, education and maintenance, that it may also deprive a testamentary guardian of such custody.
Upon tibe hearing of the petition, affidavits were produced and read on behalf of the petitioner as well as on behalf of the guardian, and the court deeming the controversy to be of sufficient importance to justify the order, directed a reference to a referee to take proof of the facts, as they were generally alleged against the. guardian. On the hearing before the referee the counsel for the petitioner proposed that he should receive not only the petition, but the affidavits. That was objected to by the counsel for the guardian who excepted to the decision of the referee ahowing the papers to be .made a part of the proceeding, These papers do not appear to have been presented to the referee as evidence for his consideration, but as disclosing the allegations and assertions made by and in behalf of each of the persons engaged in this controversy. And that seems to have been his opinion in tíre proceeding, for he has made Ms decision upon the evidence as it was obtained from the witnesses sworn and examined upon the hearing. Even, therefore, if these affidavits should not strictly have been received, they in no manner biased or prejudiced the case against the guardian, and an error in that respect would not result in a reversal of the order. This also seems to have been the view taken of the proceeding by the special term when the order was made from which the guardian has appealed, for it was upon a consideration of the evidence, as it has been given by the witnesses, that the order was directed removing the guardian.
Beyond these objections the counsel for the guardian has presented elaborate arguments tending to support his conclusion that the evidence was not sufficient to warrant the removal of the appellant.. It will not be necessary to follow these arguments'minutely fin-the Consideration of theevidence, for the impression produced by that which must be accepted as controlling, is such as to require this point to be determined against the guardian. She is a widow and a relative of the deceased father of these children, and was a friend and associate of their mother, who, believing her to be a competent and trusty person for this purpose, appointed her by her will the guardian of these, her infant daughters. These three children are still in immature years. The eldest, Anna 0., was of the age of twelve years; Edith, the second daughter, of the age of nine years, and Gertrude, the tMrd daughter, of the age of seven years, shortly before the time when these proceedings were instituted. The family of the guardian consisted of herself and of her son Richard Butler, of the age of about eighteen *575 years, in addition to the domestics of her household. The evidence does not show that she ill-used these children while they remained in her custody as their guardian, but it does tend to prove improper management on her part in directions given to the two younger of them while they were members of her household. These directions sent one, or both, of fhé younger children to the room of her friend and visitor Mr. Chambers before he was dressed in the morning, and when his clothing consisted of only his flannel shirt and drawers. This person was a friend of the mother of the children, and a weekly visitor at the residence of the guardian, remaining there over night, and in the morning, on several occasions, was allowed to repair to her room with his pants and undershirt on, to complete his toilet under the observations of one or both of these younger children. • Her conduct with this person is not free from suspicion, and so far as the children were affected by it she appeared to have no special feelings of delicacy on their account. Upon one occasion Madeline Fardon, who was slightly older than the second of these children, was a visitor at this residence, and she, with the sanction apparently of the guardian, was allowed to sleep in the same bed with her own son, to the knowledge and within the observation of her wards. This, though not a personal injury to the wards themselves, was, to say the least of it, an indecent exhibition of indifference to the influences which should be exerted over the children. It was not such an example as should have been permitted to have been brought within the range of their observation. And this circumstance, together with the other conduct already referred to, tended very decidedly to prove that the guardian possessed no very high degree of solicitude for the moral influences to which these children should be subjected.
But the more serious and important of the charges affecting the care and management of these children is that relating to the conduct of the guardian’s son Richard. It has been charged against him that he took indecent liberties with the younger two of these children and subjected them to sexual abuse. This has been denied on the part of herself and her son, and it has been intimated that the charge originated with the family, friends or relatives of the children, who desired in that manner to supersede her guardianship. And from the evidence it is reasonably clear that some of them certainly were dissatisfied with her selection as the guardian of these children. But it is not to be concluded from this fact or the evidence given in exoneration of herself and her son, that the charge itself has not been sufficiently supported to maintain it. For before any *576 motive could have been supplied to the children to make a false charge against the guardian’s son, or any influence could probably have been exerted over them inducing them to misconduct themselves in that respect, they had disclosed to their nurse Alice O’Neil the fact that they had been interfered with in this very improper manner. The relations given by them of what is státed to have occurred are so innocently childish hi themselves as to exclude the probability that they had been practiced upon by any person or persons, or in any manner induced to relate what had not happened as a part of their own experience. These relations were made by the younger children to the nurse on Friday before Mrs a Sterns, who is their distant relative, spent the night at the residence of the guardian. And they are entirely consistent with the evidence given by these two younger children upon the hearing before the referee, and strongly corroborate the probable truth of their evidence and warrant the conclusion that in their intermediate denials they had been induced by the guardian, or some friend interposing in her behalf, to make such denials to shield and protect her against the result of such a proceeding as this. The conduct to which the two girls had been subjected had come to the knowledge of their elder sister Annie also previous to the time when there could have been any motive or opportunity for practicing upon them or creating a disposition to state otherwise than truly what had taken place. • This eldest sister occupied the same bed with Mrs. Sterns during the night she was at the dwelling, and then related to her what she had understood had been the conduct of the guardian’s son to her two younger sisters. And it was not until after that relation that either Mrs. Sterns, or the petitioner in the proceeding, appear to have made any investigations or taken any steps towards the removal of the appellant as the guardian of the children. Their conduct, therefore, does net appear to have been stimulated or induced by any unfriendly disposition towards the guardian, but from a conviction that what these children had said was the truth, and that she was no longer a proper person to have the charge and custody of the children as long as they were exposed to abuses of this description. And. upon that conviction, which may have been induced in part by the feeling that she ought not in the first instance to have been appointed their guardian, they have proeéeded with this investigation. And certainly after the information received by them from the children, and substantially also from their nurse, it was hot only proper but commendable that they should intervene for the protection and .benefit of these children, who were too young to be expected to do that for themselves. The evidence given *577 upon this charge is taken together, of so convincing a character as to render it apparently impossible for any person other than the guardian to doubt its truth. It is not necessary to go into any detail of the statements of the witnesses, to exhibit the strong probability that what the children said was true. It is sufficient to say that the details repeated by them were beyond their own invention, or imagination and must have been impressed upon their minds by the unfortunate occurrences to which they had been subjected. At the time when the nurse was informed, no idea of the magnitude of the wrong had entered into the minds of these two children, and their artless relations of the occurrences carried with them the impress of truth at every step. Their conduct and their statements wholly corresponded, leaving no ground for substantial doubt, that what they said as to the conduct of the son, was most undoubtedly the truth. And that very clearly exhibited the impropriety of their being longer permitted to remain mernbers of the same family with the guardian. Her testimony is that she had sent her son from the house, intending that he should no longer be a member of the family of which these children formed a part. But neither that circumstance, nor the fact that she was not complicated with misconduct of her son, would justify the court in leaving the children longer in her charge. For, as she states herself, she disbelieved what the children had said and considered her son to have been falsely accused by them, that would in future induce a feeling of indifference and probable resentment on her part towards the children rendering her an improper person for their custody. It would be entirely natural for the mother believing her son to have been untruthfully accused of this misconduct by the children, to regard them as the agents of a gross wrong to her own family. And with that conviction resting upon her mind she could not be expected to give them that solicitude and affectionate care which their sex and ages require, or to maintain with them, the confidential relations that a guardian standing in the place of their mother, should be expected to maintain. After what has occurred in this respect according to her own statements, even if she could be relieved from direct responsibility for the conduct of her son, she would manifestly be an improper person to be longer entrusted with the charge and control of these children.
What the court is required to consider is that which will best promote their safety; welfare, education, deportment and security and these • objects evidently will be best sub-served by placing them under the guardianship of some *578 other person who will not be induced to indifference or stimulated to resentment by the conviction that she has suffered a wrong through the accusations and statements of the children themselves. And as long as a friendly, competent and careful guardian can well be secured for them, it should be done in preference to subjecting them to the risks which they would encounter by returning them again to the charge of the appellant.
_ No reason has been discovered, from a very full examination given to the case, for doubting the sufficiency of the evidence to maintain the conclusions arrived at by the referee. And as the proceedings themselves in all respects appear to have been regular, the order from which the appeal has been taken should' be allowed to stand. No further direction than this will be necessary for the disposition of the appeal, for the order itself has provided for the return of the deposit of $1,000 to the petitioner. And as the case is an unfortunate one, not only for the children themselves but also for the guardian, the affirming the order appealed from should.be made without costs.
Davis, P. J., and Brady, J., concur.